FRANCES E. DICKINSON v. THE TOWN OF ROCKINGHAM.

### *Highway.*

A highway was rendered impassable by a freshet. One of the selectmen, pursuant to a previous understanding among the selectmen that each should take charge of the matters pertaining to the duties of the office in their respective parts of the town, and that what each did should be concurred in by the others, placed a barrier across the highway for the purpose of preventing travelers from passing over it while thus out of repair, and of turning the travel, for the time being, and until the highway was repaired, around the founderous portion of the highway, over a hill road, which was a private way, not adopted by the town.

*Held,* that this constituted a temporary adoption of the private way as a substitute for the highway while not in condition 'for use, and that the town thereby became liable for damage occasioned by reason of the insufficiency and want of repair of said private way.

*Held*, also, that, when said private w·y thus became a substitute for the highway, it became such for all  travelers, as well those who had occasion to use it in going to and from houses situate thereon, as those who used it to pass around the founderous portion of the highway. WHEELER and ROYCE, J. J., dissenting.

CASE for injury caused by the insufficiency of a highway. Plea, not guilty, and trial by jury, April term, 1871, Windham County, BARRETT, J., presiding.

The injury occurred on the evening of the 5th of November, 1869, near Saxtons River village. A public highway and important thoroughfare has for many years existed between said village and Grafton, which the defendant was bound to maintain. In the October freshet of 1869, a piece of that highway in the westerly part of said village, was washed out, and rendered wholly impassable. While it was thus impassable, the travel between Grafton and said village passed over a hill road, shown on a plan that was proved and used on the trial. The injury to the plaintiff occurred on said hill road. There was no other road besides these two, from said village to Grafton. The plaintiff gave evidence tending to show that said hill road was, and had been for many years, a public-highway. The defendant gave evidence tending to show it was always a private way, and not a public highway. On this point, the case was submitted to the jury without exception. The plaintiff claimed, and gave evidence to show, that, if not a public highway previous to said freshet, it became so on the main road being washed out by the freshet, by the action of the selectmen in relation thereto, and so continued when the plaintiff was injured upon it. The defendant claimed, and gave evidence to show, the contrary. This was the main point of controversy in the trial. On this subject, the plaintiff's evidence tended to show acts on the part of one of the selectmen,—Willard, —who lived in said village, in accordance with a previous understanding among the selectmen as to each taking charge, and doing what he thought best, in matters proper for the selectmen to attend to, in the parts of the town in which each respectively lived—they living in different parts of the town, and remote from each other—and claimed that such acts were of the same effect as if done with the present concurrence of all the selectmen. The plaintiff also gave evidence on this subject tending to show a sub-

sequent ratification by the other selectmen, of what had been done by the one living in said village. The defendant gave evidence tending to show the contrary, and that what Willard said, or did, which the plaintiff claimed made the town liable in respect to the hill road, was said and done by him alone, and not in accordance with any previous understanding with the other selectmen, and was not subsequently ratified by them. The details of the evidence upon this subject are sufficiently indicated by the part of the charge under which the subject was submitted to the jury, which was—that though the hill road, up to the time Willard directed the ladder to be placed across the lower road, was a private way, and had not been adopted by the town ; yet, if they found that Willard, when he directed the ladder to be put across the lower road, not only intended to prevent travelers from going over the lower road while thus out of repair, but also intended to turn the travel over the hill road for the time being, and until the lower road was put in repair ; this would constitute a temporary adoption of the hill road as a substitute for the lower road while not in condition to be used, provided the jury should also find that this act of Willard was concurred in by his associate selectmen ; that if so adopted by the selectmen, the town would be responsible for its insufficiency and want of repair ; that in order to constitute such concurrence by his associates, it was not necessary that they should have been personally present, or have had knowledge of what was done at the time, or of the specific act to be done ; that if there was an understanding between the selectmen that each should take charge of the matters pertaining to the duties of the office in their respective parts of the town, and that what each did should be concurred in by the others, whatever was done by Willard in causing the ladder to be put across the road, as shown by the evidence, should be treated as done in pursuance of such undersanding, and with the concurrence of his associates. To this part of the charge, the defendant excepted.

Early in the evening of the injury, the plaintiff went from her home to said village, about a mile and a half, with a man named Lawrence, who was carrying grain to a mill to be ground that

evening.   Her purpose in thus going was to get some medicine of
Dr. Campbell, whose house is shown on said plan, and then to
go to the Wiley house, also shown on said plan, to visit her
aunt while the grain was being ground, and when ground, Law-
rence was to call at her aunt's and carry her back home.   She
went to said places according to her purpose, and Lawrence
called and took her into his wagon at her aunt's, approaching the
house from the east, and started from the house, westwardly,
on said hill road, on his way home.   Neither the plaintiff nor Law-
rence would have used the main, or lower, road, that evening, for
any of their respective purposes, and they would have gone upon
and used said hill road just as they did for the purposes of the
plaintiff as aforesaid, if said lower road had not been injured by
the freshet, and had been in perfect condition for all kinds of
travel, and unobstructed ; in other words, the plaintiff went on
the hill road, only to visit her aunt, and Lawrence went there to
get her and carry her home ; but for that, he would not have
gone on to that road ; and he would have done just as he did, if
the lower road had been in perfect condition for use, and unob-
structed, and would not have used said lower road at all, between
the termini of said hill road.

 The defendant specially requested the court to charge the jury,
that, if, up to the time of the freshet, the hill road was not a pub-
lic highway, which the town was bound to maintain, and if what
was done by Willard in putting the ladder across the lower road
constituted a temporary adoption of the hill road as a substitute
for the other, while being repaired, that such temporary adoption
would be for the purpose, only, of persons using the hill road as
a way around the washout, and in lieu of the main or lower road,
and that as to persons going to and from the "Newton" and
"Wiley" houses, and using this road for that purpose, it must be
treated as a private way, and its character unaffected by the tem-
porary adoption in this respect; and if the jury found that the
plaintiff, in pursuance of a purpose she had at the time she left
Milton W. Wiley's with Lawrence, was using this road for the
purpose of a visit at, or a return from, the "Wiley house," she
could not recover.

The court, *pro forma*, refused to charge as requested, but charged, in substance, that if the road was temporarily adopted in the manner above set forth, as a way around the washout while the main road was disabled, the rights of the plaintiff would be the same, as against the town, if she used it for the purpose of going to or from Wiley's, as though she used it as a way around the washout—that there was no distinction between the two kinds of travel. To this part of the charge, and the refusal to charge as requested, the defendant excepted.

In every other respect, upon all points and aspects of the case, the court charged fully, and to the satisfaction of both parties; and the exceptions taken, in no manner involve any omission to charge in respect to the subjects of said exceptions, but for the error in the charge as above set forth, it being correct and full in every other respect. Verdict for the plaintiff.

——— ———, for the defendant.

During the freshet of October, 1869, a portion of the public highway was washed away, so as to be impassable and dangerous. The point where it was washed away, was between the easterly and westerly junctions of the hill road with the main road. Willard, one of the selectmen, caused a ladder to be placed across the main road, as shown by the plan, near its junction with the hill road. The plaintiff claimed that by this sole act of Willard, the hill road, though a private way up to this time, became, for the time the main road was being repaired, a public highway; that it was a temporary adoption of the hill road, as a substitute for the main road, while being repaired. The plaintiff also claimed that this act of Willard could be treated as concurred in by his associates, by reason of a previous understanding between the selectmen that each should take charge of the matters pertaining to the duties of their office, in each of their respective parts of the town, and that what each did should be concurred in by the others.

The charge of the court upon this feature of the case, was to the full extent of the plaintiff's claim, as above set forth. The

defendant complains of the charge in this respect, for two reasons :

*First.* The charge did not properly ˙restrain the jury from finding Willard's intention to turn the travel over the hill road, from the mere act of placing the ladder across the lower road. The charge is based on the proposition that it is legitimate to infer the intention from the act alone.

*Second.* We complain of the charge, because it assumes that "a previoūs understanding between the selectmen, that each should take˙charge of the matters pertaining to the duties of their office in their respective parts of the town, and that what each did should be concurred in by the others," is quite sufficient to enable Willard, without the knowledge of his associates, to create a public highway where one never existed before ; and we complain because the jury were not instructed that it was necessary that they should find that Willard's associates concurred in his intention as well as in his act.

In relation to the first ground of objection to the charge, we say : It was the duty of the town to warn travelers of the danger to life and limb, that would be incurred in passing over the main road. This is usually, and very properly, done by placing a barrier across the disabled road, as done by Willard in this case. The barrier erected by him spoke clearly and unmistakably in this direction. Nothing more was done than necessary for this purpose. Nothing was left undone that could have been done, to characterize the purpose for which it was done. Nothing more, and nothing less, was done, than would have been if there had been no private road near there. The private way happened to be near where the public way happened to be washed away. The town was not responsible for the nearness of the private way to the locality of the washout. *Sherman on Neg.* § 376.

The hill road, being an open private way to the "Newton and Wiley houses," Willard had no right to interfere with it, or the travel over it. He was bound to let it remain as he found it, an open private way. *Page* v. *Weathersfield,* 13 Vt. 424.

The exceptions state that the "details of the evidence are sufficiently indicated by the part of the charge under which the sub-

ject was submitted to the jury," and this is the part of which we now complain. The sum total of the evidence detailed—and all there was upon this point is given in the charge—is the mere act of Willard in placing the ladder across the public or main road. Add to this mere act the fact of the nearness of the hill road to the locality of the washout, and we have all there was in .the case upon which to base a finding of an intention on the part of Willard to turn the travel over the hill road.

This act of Willard, speaking clearly and unmistakably in another .direction, does not afford legitimate and sufficient evidence of an intention to turn the travel over the private way. The jury should have been instructed that they were not at liberty to find such an intention from an equivocal act, speaking in another direction—from an act which it was the duty of the town to perform for another purpose. *Blodgett* v. *Royalton*, 17 Vt. 40.

The second ground of complaint against this part of the charge, is, that it assumes that the general understanding between the selectmen was intended to be pushed so far as to apply to the creation of public highways. Such a construction is unreasonable and dangerous. The jury were, by the charge, compelled to give this construction to the "general understanding." The court told the jury, without qualification, and as matter of law, "that if there was an understanding between the selectmen, that each should take charge of the matter pertaining to the duties of the office in their respective parts of the town, and that what each did should be concurred in by the others, whatever was done by Willard in putting the ladder across the road, as shown by the evidence, should be treated as done in pursuance of such understanding, and with the concurrence of his associates." The court also instructed the jury, "that if they found that Willard, when he directed the ladder to be put across the lower road, not only intended to prevent travelers from going over the lower road, while thus out of repair, but also intended to turn the travel over the hill road for the time being, and until the lower road was put in repair, this would constitute a temporary adoption of the hill road as a substitute for the lower road while not

15

in condition to be used." It was as necessary that Willard's associates should concur in the purpose for which the act was done, as in the act itself: And if Willard had a·double purpose, they should have concurred in the double purpose.

A public highway cannot be created by adoption, unless there has first been a dedication by the owner of the fee. The case at bar shows no dedication, or intention to dedicate; and, the charge, as well as the evidence, is entirely barren of this element. *Page* v. *Weathersfield, supra; Blodgett* v. *Royalton, supra.*

Travelers may have had the right to travel the private way in the condition it then was, because of the founderous condition of the public way, yet the town—in case there was no dedication—had no right to dig the soil, or in any way change the character of its surface, unless they obtained the right in the mode pointed out by the statute.

It is claimed that when the public way became impassable, it was the duty of the selectmen to change the location so as to give a safe passage, and that the statute has given selectmen power to do it. That they have power to do it, is unquestioned. Whether it is their duty or not, depends upon circumstances.

In this case, it was their duty to repair the public way. They had the power by statute to do it. Neglect to do so would have subjected them to an indictment. The case does not show that the town lacked in energy and diligence in putting the public way in repair. *Hyde* v. *Jamaica,* 27 Vt. 443; *Briggs* v. *Guilford,* 8 Vt. 264.

The cases of *Willard* v. *Newbury,* and *Batty* v. *Duxbury,* have no application to the one at bar. In each of these cases, the railroad corporation had, by its charter and the statutes, obtained the right to permanently construct its roadbed over and upon the highway, and it became permanently obstructed by the exercise of the corporation's lawful right. The town could not remove the obstructions; and the town's duty was to do the only thing that could be done—provide a new public way. Gen. Stat. ch. 28, §§ 34, 35, 36, 37; *Willard* v. *Newbury,* 22 Vt. 458; *Batty* v. *Duxbury,* 24 Vt. 155; *Hyde* v. *Jamaica,* 27 Vt. 443.

In *Willard* v. *Newbury*, the plaintiff was injured on the obstructed highway, and not a by-way. The town was held liable, because they did not maintain a barrier across the road as a warning of the danger.

In *Batty* v. *Duxbury*, the injury occurred on a by-way, made by the railroad company as a substitute for the public way. The by-way was insufficient. The town could never remove the railroad bed. It was a permanent obstruction. Their duty was to have a sufficient by-way, or substitute, and in this case one of the counts went upon this ground.

In the case at bar, the plaintiff's declaration describes a public highway leading from Saxtons River village to Grafton, and avers an injury to plaintiff in consequence of its insufficiency. There is no count going upon the ground of the neglect of a town to provide a suitable by-way.

In view of what the court charged upon the question of the temporary adoption of the private way as a substitute for the public way, while it was being repaired, the defendant was clearly entitled to have the jury instructed as specially requested. The part of the public way where the washout was, could not be used with the private way, for the purpose of going to and from the "Newton and Wiley houses."

The case shows that the plaintiff's purpose when she left home, was, to first go to Dr. Campbell's, and then to the "Wiley house," to visit her aunt, and that she did so ; that in pursuance of an arrangement she had with Lawrence when she left home, he called for her in the evening, at the "Wiley house," and that the plaintiff was injured on the private or hill road, on their return home. Whether the public way had been in repair or not, they would not, and could not, have used it. There was no way she could have gone to her aunt's and returned to Milton W. Wiley's, but to use the hill road just as she did. She was not in the use of the hill road as a substitute for the main road while it was being repaired.

The case shows that the town, in the line of its duty, decided to repair the main road, and did so. If we assume that it was its duty, while doing this, to provide a suitable way around the

washout, for the travel that might, and would, go over that part of the public way, if in repair, we assume quite enough. The town was not called upon to make a better private way for the occupants of the "Newton and Wiley houses," and for persons using it to go there on visits, or business.

The private way was in the condition its owners chose to have it, and as they had used it for years. What had occurred that cast upon the town the burden of making it better for their purposes ? If one of the occupants of these houses, after the freshet, had been injured upon the hill road, while using it as they had done theretofore, would the town be liable for the injury ? We think not. As to them it was still their private way. Persons who used the hill road, not as a substitute for the main road, but as a way to or from the "Newton and Wiley houses," could have no greater rights against the town than the owners or occupants of these houses.

We do not admit that the hill road became a *highway*, or a portion of the public highway, within the legal signification of that term. If the town had made and opened it to travel, to be used only while the main road was being repaired, it would not have been a *highway*, but merely an open public way for the time being, what is termed a by-way. When the main road was repaired, it ceased to be a public way, or by-way, without any action on the part of the town authorities. *Batty* v. *Duxbury*, *supra*.

The case of *Brown* v. *Winooski Turnpike Co.* 23 Vt. 104, is claimed by plaintiff to be identical in principle with the one at bar. It is cited as an authority for the plaintiff's claim, that it makes no difference for what purpose the hill road was used. The case is widely different from the one at bar, and does not sustain the plaintiff's proposition.

The charter of the turnpike company gave the right to recover damages of the company, only to those of whom toll was demandable. The only question in the case was, whether the defendant was a person of whom toll was demandable by the terms of the charter. It was held that toll was demandable of the plaintiff, and the defendant therefore liable by express terms of

the charter.    *Tisdale* v. *Norton*, 8 Met. 392 ; *Shepardson* v. *Cole-raine*, 13 Met. 55 ; *Smith* v. *Wendell*, 7 Cush. 498 ; *Kellogg* v. *Northampton*, 4 Gray, 69.

*Chas. N. & S. T. Davenport*, for the plaintiff.

It was the duty of Rockingham to keep this great thoroughfare " in good and sufficient repair at all seasons of the year."    Gen. Stat. ch. 25, § 1.    And if any portion of it was rendered impassable, it was the duty of the selectmen to change the location of the highway, so as to afford the traveler a safe passage.    And the statute has given the selectmen the power and the means to perform this duty.    Gen. Stat. ch. 24, § 24.

In *Willard* v. *Newbury*, 22 Vt. 458, the court say : " We think that the town was bound, during the interruption of the travel by the construction of the railroad, to see that a suitable by-way was provided for the public, and to take all reasonable and proper precautions to guard them against passing upon the highway, while it remained unsafe by reason of the operations of the railroad company in the construction of their road."    And in the subsequent case of *Batty* v. *Duxbury*, 24 Vt. 155, which was an action to recover damages for an injury happening upon a by-way which the Vermont Central railroad had constructed around an obstruction which they had necessarily created in the construction of their railroad, and which, in the language of the case, furnished " no evidence that the town had ever recognized said new way, or done any act in connection therewith to adopt it, but the contrary did expressly appear," the court held the plaintiff entitled to recover.    And REDFIELD, J. says : " We think it must now be regarded as settled law in this state, that the primary obligation rests upon towns to see that the public have a proper by-way to pass around the obstruction," and that, though it may be doubtful whether such a by-way can be regarded as a portion of the *highway*, yet, " it is an open public way for the time being, and, as such, required to be kept in a certain state of repair."    And again : " The traveler is not bound to inquire who makes by-ways, or by what authority obstructions are put upon highways.    But towns, after having reasonable notice of the existence of obstruc-

tions in their highways, are bound to remove them, or make safe by-ways to pass around them, or see to it that they are properly made by others, in order to exonerate themselves from liability to those who have occasion to travel." See also opinion of Ch. J. REDFIELD in *Hyde* v. *Jamaica*, 27 Vt. 468 ; *Barber* v. *Essex*, Ib. ; *Briggs* v. *Guilford*, 8 Vt. 264 ; *Matthews* v. *Winooski Turnpike Co.* 24 Vt. 480. These cases are full authority for the plaintiff's right to recover, without the element of the selectmen's action in fencing up the lower road, and thereby turning the travel over the hill road. The undisputed facts in this case make a much stronger one for plaintiff than either *Willard* v. *Newbury*, or *Batty* v. *Duxbury*.

This hill road, if not a way which the defendant was bound to keep in repair up to the time the selectman Willard fenced up the lower road, and left no other avenue of travel, became by this act of Willard, accompanied by the intention which the jury have found he had to turn the travel over the hill for the time being, and till the lower road was put in repair, a highway which the defendant was bound to keep in repair, so long, at least, as it was used as a substitute for the lower road. The case at bar is one where there had been an open public way for a period of more than fifty years, and though the evidence did not show many acts of the town recognizing it as a highway, yet the public had used it " for a time whereof the memory of man runneth not to the contrary." Conceding that this road had not become a public highway by *prescription* (as we think upon principle and authority it had), it is certain that, from this long user, a *dedication* to the public by the land owners would be presumed, and very slight acts by the town, or its agents, would constitute an acceptance or adoption of this highway.

In *Blodgett* v. *Royalton*, 14 Vt. 294, WILLIAMS, CH. J. says : " If the town, or the selectmen as their agents, shut up an old road, and leave no other avenue for travel, except on a road which they have caused to be made, or if they put the same into a rate bill, &c., the town would be liable to the traveler for the insufficiency of such road." And see *Blodgett* v. *Royalton*, 17 Vt. 40 ; *Hyde* v. *Jamaica, supra ; Morse* v. *Ranno*, 32 Vt. 600 ; *Folsom*

v. *Underhill*, 36 Vt. 580 ; *Bagley* v. *Ludlow*, 41 Vt. 431–2 ; Angell Highways, § 143–157 *et seq* ; *Whitney* v. *Essex*, 42 Vt. 520. In *Hobbs* v. *Lowell*, 19 Pick. 405, the court held : " That a town by forbearing to prosecute those who had shut up an old highway, and substituted a new one in its stead, and by setting up a guide post in the new way, had adopted it, so as to be liable for its insufficiency." *Stevens* v. *Nashua*, 46 N. H. 192.

It may be said that the town is not bound by the act of Willard, because he was but one of a board of three selectmen. To this objection we answer—this is not one of those acts which require the express assent or concurrence of a majority of the selectmen. When an emergency arises like the one which made it necessary for the selectmen to act in this case, it is sufficient when one of the board does acts that are reasonable and necessary, if the other members do not disapprove and disavow those acts when they come to their knowledge. But the jury have found that this act was concurred in by his associate selectmen, and that it was done pursuant to an understanding among the board, that each should take charge of the matters pertaining to their duties in their respective parts of the town, and that what each did should be concurred in by the others. *Tarbell* v. *Plymouth*, 39 Vt. 429 ; *Hills* v. *Marlboro*, 40 Vt. 648 ; *Haven* v. *Ludlow*, 41 Vt. 418 ; *Bellows* v. *Weeks*, Ib. 590 ; *James* v. *Starksboro*, 42 Vt. 602.

The defendant was not entitled to have its special request answered ; and the charge of the court upon this subject was right. There is no such thing known to the law of Vermont, as a hihgway for *one* citizen which is not a highway for *all*. If this hill road was a highway at the time of the accident, the defendant is liable ; if not a highway, the defendant is not liable. And for the purposes of this case, that is the only test. " A highway is a public road which every citizen has a right to use." Every thoroughfare which is used by the public, and is, in the language of the common law, " common to all the king's subjects," is a highway, whether it be a foot-way, carriage-way, or a navigable river. 3 Kent Com. 432 ; Angell Highways, § 2 ; *State* v. *Wilkinson*, 2 Vt. 487 ; Sher. & Redf. on Negl. § 343. And when a highway is established in a town, whether by proceedings under

the statute, by dedication and adoption, or by prescription, it becomes the duty of the town to keep that highway in good and sufficient repair at all times and seasons. Sher. & Redf. on Negl. §414. And it is no concern of the town, what motive brings the traveler upon its highway, or what his business may be, provided, perhaps, that it be not unlawful.    It is sufficient that he be a traveler, using the road for the purpose of travel.

It seems to us that the case of *Brown* v. *Winooski Turnpike Co.* 23 Vt. 104, is, in principle, identical with the one at bar.

The opinion of the court was delivered by

Ross, J.    Under the instructions of the county court, the jury have found that when Willard, one of the selectmen of the defendant town, directed the ladder to be placed across the main road, near the junction of the hill road with the main road, he intended thereby, not only to obstruct the main road so that travelers would not pass over that portion of it which was out of repair, but, also, to turn the travel over the hill road ; and that he did this agreeably to an understanding which existed between him and the other selectmen, that each one should take charge of the matters pertaining to the duties of their office in his part of the town, and that the others would concur in whatever he did in that behalf.    The court treated the hill road as a private way for the sole use of three or four families that lived upon it, up to the time Willard directed the ladder to be placed across the main road, but told the jury, if they found he intended to turn the travel over the hill road while the main road should be out of repair, when he directed the ladder placed across the main road, and he directed the ladder placed there agreeably to a previous understanding with the other selectmen, this would constitute a temporary adoption of the hill road as a substitute for the lower road while not in a condition to be used.    The defendant complains of this instruction, because he claims that it did not restrain the jury from finding Willard's intention to turn the travel over the hill road, from the mere act of placing the ladder across the lower road ; and because it assumes that such a previous understanding between Willard and his associates, was

sufficient to enable Willard, without the knowledge of his asso-
ciates, to create a public highway where one had not before ex-
isted ; and because the instructions rendered it unnecessary for
Willard's associates to concur in his intention, as well as in his
act. The ladder was placed across the main road just easterly
of the westerly junction of the two roads. The hill road ran
nearly parallel with the main road, and there was no fence be-
tween them. The ladder, from its position in regard to the two
roads, would naturally and inevitably, not only obstruct the fur-
ther passage of the traveler on the main road, but also turn him
over the hill road. To the traveler desirous of passing eastward,
it would speak as distinctly in the one direction as the other ; and
of this, Mr. Willard, as a prudent man, must have been aware
when he directed the ladder placed there. We know of no rea-
son why a town officer should be exempt from the rule which so
extensively obtains in the law, that a man is presumed to intend
the natural consequences of his acts. Under this rule, Willard's
act, in the absence of any warning to the traveler to the contrary,
tended to show that he intended to turn the travel over the hill
road, while the main road was out of repair. The traveler's
condition would be a very unfortunate, not to say hard, one, if,
upon finding the main road obstructed, with another road running
nearly parallel with it, leading from it just before reaching the
obstruction, he must go out on a search to find the town officer
placing the obstruction there, and inquire whether he intended
thereby to turn him into a plain, open way, leading round the ob-
structed portion, before he could use it for a temporary highway
which the town was bound to keep in repair. A town cannot be
said to have fully discharged its duty to the traveler, when one
of its main highways is washed away to an extent that it will take
days or weeks to repair it, by simply placing an obstruction at the
two ends of the washout, without providing a by-way to pass
round it. The traveler would naturally expect to find such a
by-way round such a spot, and seeing a by-way there, opened and
in use, would have a right to conclude it was prepared by the
town for his use. We think the court were right in allowing the
jury to find, from his act in placing the ladder across the main

road at the place he did, with the hill road leading out of it near to and before reaching the ladder, that Willard intended to turn the travel over the hill road.

Nor do we think it necessary for all the selectmen to have been present, and joined in directing the placing of the ladder across the main road, and in intending thereby to turn the travel over the hill road, in order to make the hill road a highway for the sufficiency of which the town would be liable so long as the main road continued fenced up. Whenever a portion of a highway is swept away by a freshet, or rendered unsafe for travel from any cause, and that fact comes to the knowledge of one of the selectmen of the town, the statute imposes the duty upon him, at once to go about repairing it, and immediately to use effective means to prevent the traveler from passing over the unsafe portion of the highway, and if it is on one of the principal highways, and the making of the repairs must, of necessity, consume considerable time, it is his duty to provide a way round the founderous portion of the main highway, when it can be done without too great expense. It will not do for him to wait till he can call his associates together, and till they can all solemnly deliberate and determine what must be done. The statute imposes the duty of immediate action. It is imperative. The manner of performing the duty may require the exercise of judgment. It is not discretionary with him whether he will act or not. We think, without any previous arrangement between the selectmen, the town would have been bound by the acts of Willard alone. If Willard had not ordered the ladder placed across the main road, but had known of the washout, of the obstruction of the main road with the ladder, and that the travel was turned over the hill road, the town would have been liable for any injury happening to the traveler on the hill road, through its insufficiency. This was decided in *Batty* v. *Duxbury*, 24 Vt. 155, and has been followed and adopted in two decisions not yet reported : *Staples & wife* v. *Berlin*, in Washington county, and *Richmond & wife* v. *Woodstock*, in Windsor county. In this case the court did not go the full length of this doctrine, but only held the town liable for the insufficiency of a by-way round the obstructed highway, opened by one of its

selectmen acting under a general authority previously conferred by the other selectmen.

The court, against the defendant's request and exception, charged the jury that, if the hill road was temporarily adopted as a way round the washout, while the main road was disabled, the rights of the plaintiff would be the same as against the town, if she used it for the purpose of going to or from Wiley's, as though she used it as a way around the washout ;—that there was no distinction between the two kinds of travel. In this, a majority of the court think there was no error ; that when the hill road thus became a substitute for a portion of the main road, it became such for all travelers who had occasion to use it, whether to go to and from the Wiley house, or to pass around the washout. It became an open public way, which the town were in duty bound to maintain and keep in good and sufficient repair for such use as the town was temporarily putting it to, and this duty the town, by the force of the statute, were bound to discharge for the benefit of all persons who had occasion to use it for the purposes of travel. It was in effect, for the time being, so far as the traveler was concerned, a removal of the main highway from its former location to the location of the hill road which passed the Wiley house ; and as to the plaintiff, who was, at the time of the injury complained of, in the legitimate use of it as a traveler, the liability of the town was the same it would have been if the plaintiff had received the same injury, from the same cause, on the main highway in its original location. It may be, and probably is, true, that the town had not, as against the owners of the land through which the hill road passed, the same rights it had as against the owners of the lands through which the main highway passed. Whether it had, or not, is not at all determinative of its liability to the traveler for its sufficiency. Neither is it necessary to decide whether the town would be liable to the owners of the hill road, as a private way, for any injury happening to them through its insufficiency, while in the use of it for their ordinary domestic purposes, unless the insufficiency was occasioned by the town's using it as a substitute for the main highway. We regard the question of the town's liability to the owners of the hill road as a

private way, as separate and distinct from the question at bar, and express no opinion upon what their rights might be. We only decide that, under the facts found by the jury, the hill road, for the time being, became a part of the main highway, which the town was under a duty to keep in good and sufficient repair for all persons who were using it for the purpose of public travel, and that the plaintiff was, at the time of the injury, in such use of it, though only using it to go to and from the Wiley house.

Judgment affirmed.

WHEELER, J., dissenting.   So far as the decision made in this case holds that the defendant town would be liable to a traveler who was using the highway for the purposes of through travel, and was necessarily turned on to the by-way in order to prosecute his journey beyond the obstruction, there is no disagreement among the members of the court; but where the decision goes beyond that, and holds the defendant liable to the plaintiff, who was not turned on to the by-way at all on account of the obstruction in the highway, but who would have used the by-way, just as she did, if the highway had been in good condition and unobstructed, there is some disagreement.

That the turning of the through travel on to the by-way did not establish a highway over it, is very clear.   *Young* v. *Wheelock*, 18 Vt. 493.   No one of the selectmen alone, nor all of them together, could lay out a road there, nor anywhere else, except on application to them as a board of road commissioners, by proper petition of the requisite number of freeholders, according to the statute.   The town would not be liable to a through traveler because the by-way had become in fact a highway, but only because the authorities of the town had taken it for the use of such traveler, as a substitute for the highway while obstructed, and had induced them to take it and use it as such a substitute.   In *Batty* v. *Duxbury*, 24 Vt. 155, it was held as settled law, that it was the duty of towns when their highways were obstructed, to see that the public have a proper by-way "to pass around the obstructions;" but the case did not hold that such a by-way would become a highway for those using it for other purposes, and not

for passing around the obstruction. In *Staples* v. *Berlin*, not reported, the plaintiff was using the by-way to pass around an obstruction ; so was the plaintiff in *Richmond* v. *Woodstock*, not yet reported. And in no case that has been cited or discovered, previous to this one, has it been held that by providing a by-way to enable travelers to pass around an obstruction, the town became liable to any one using the by-way for any other purpose. In this case, as it was left, the by-way was a private way to and from private houses. The town had borrowed it for the use of travelers who might have occasion to pass around the obstruction, but not for the use of any others. This left it a private way for the use of those going to and from the private houses, as much as it was before. It was not a public highway for those going to the private houses, and not along round the obstruction, any more than it was for the occupants of those houses in going from and returning to them. It would seem to be plain that these occupants would have no claim upon the town for any injury they might receive on account of the insufficiency of the by-way, for the injury would be occasioned by a defect in their own private way. And it seems to me to be nearly as clear, that a person going to, or returning from, the houses, would have no claim for such injury ; for that injury would be occasioned by the use of what to him, for that use, was a private, and not a public, way. The plaintiff, as the case states, had been over the by-way to the Wiley house, and was returning from there when she was injured, and had no occasion to use the obstructed portion of the highway on either of these journeys. To her, the condition of the regular highway was of no importance, and the turning of through travel from it on to the by-way, had not, in any manner, affected her. The by-way was not a highway in fact, nor had it been taken for her use as such ; nor had anything been done, by, or in behalf of, the defendant, that in any way injured her, or led her where she received injury. If the travel which was turned on to the by-way had made it more dangerous than it was before, and this had injured her, the case might merit different consideration ; but nothing of this kind appears.

As the case stood, it seems to me that the plaintiff showed no liability on the part of the defendant. I am requested by Judge Royce to state that he concurs in this opinion.